PRATT, Senior District Judge,
concurring in part and dissenting in part.
I respectfully dissent from the majority’s position on Riley’s retaliation claim against Roach for refusing to release him from his cell on July 8 and 9, 2009. Riley claims that when he asked Roach on July 8 why he was refusing to release Riley from his cell, Roach replied, “I don’t like inmate paper pushers. Specifically when inmates file against one of my buddies.” The record also contains two inmate affidavits attesting that Roach treated Riley differently from other inmates by refusing to release him from his cell for work. I believe this evidence is sufficient to sustain Riley’s prima facie burden under Mt. Healthy to show that retaliation was a motivating factor behind Roach’s refusal to release Riley from his cell on the dates in question. For reasons discussed infra, I also believe that Riley’s direct evidence of Roach’s retaliatory intent is sufficient at the summary judgment stage to sustain Riley’s burden to “plead[] and prove the absence of legitimate correctional goals for the conduct of which he complains,” as required by Pratt. See Bruce, 351 F.3d at 1289-90 (“Because Bruce raised a jury issue that the stated penological goals were not legitimate, summary judgment was not appropriate on the retaliation claim.”).
*508 Roach does not actually recall whether he released Riley from his cell on the dates in question, but contends that if he did not, “one likely reason is that there were no inmates who needed haircuts on those dates.” Roach further asserts that he only ever refused to release Riley from his cell for work to “improve safety and security by keeping Riley in his cell when Riley had no haircuts or other barber-related work to perform.” Riley, however, has proffered evidence that he and the other barber in Building 7 were ordinarily released from their cells for approximately thirty minutes each morning to perform barber-related work, i.e., to compile a list of inmates needing haircuts that day. Although this practice departed from the prison’s operational regulation requiring the Housing Unit Officer to sign inmates up for haircuts upon their request, Roach neither references the operational regulation nor claims to have relied on it in deciding whether Riley should be released from his cell.[1]
Even accepting that prison safety and security is the quintessential legitimate pe-nological interest, it appears to me that Roach has merely “artieulatfed] a general justification for a neutral process” that is insufficient to warrant summary judgment in his favor. Bruce, 351 F.3d at 1289. Riley’s direct evidence that Roach harbored a retaliatory animus at the time he refused to release Riley from his cell is sufficient to raise a genuine issue of material fact as to whether Roach’s decision was made in retaliation for Riley’s exercise of his constitutional rights. See id. (“[I]f, in fact, the defendants abused [an otherwise neutral prison regulation] as a cover or a ruse to silence and punish [the plaintiff] because he filed grievances, they cannot assert that [enforcement of such regulation] served a valid penological purpose, even though [plaintiff] may have arguably ended up where he belonged.”). Accordingly, I would reverse the district court’s grant of summary judgment in favor of Roach on Riley’s claim that Roach improperly retaliated against him by refusing to release him from his cell on July 8 and 9, 2009. I concur with the majority opinion in all other respects.

. Roach claims that there is no evidence that he, as an officer newly assigned to Building 7, was aware that Riley had been delegated the task of compiling the haircut list. While this may be true, the record likewise contains no evidence suggesting that Officer Roach was unaware Riley had been delegated this task.